# In the United States Court of Federal Claims

No. 24-698
Filed: May 24, 2024
Reissued: July 22, 2024†

---

**LEGACY CORPORATION OF ILLINOIS,**

        *Plaintiff,*

v.

**THE UNITED STATES,**

        *Defendant,*

and

**DUBUQUE BARGE AND FLEETING SERVICE COMPANY,**

        *Intervenor-Defendant*

---

## ORDER

**TAPP, Judge.**

In this bid protest, the Department of the Army Corps of Engineers ("Army") did not consider Plaintiff Legacy Corporation of Illinois' ("Legacy") offer after the Small Business Administration ("SBA") did not issue Legacy a certificate of competency ("COC"). Along with its Complaint challenging this determination, Legacy moved for emergency injunctive relief. (Pl.'s Mot., ECF No. 4). The Court finds that Legacy has not shown likelihood of success on the merits or irreparable harm, and, therefore, the motion for injunctive relief is **DENIED**.

### I. Factual Background

The purpose of the solicitation at issue is to provide habitat restoration related services at Steamboat Island, which sits between Scotts County, Iowa and Rock Island County, Illinois. (*See*

---

† This Order was originally issued under seal, (ECF No. 27), and the parties were directed to file a notice of redactions consistent with the Court's instructions. That Notice was filed on June 6, 2024. (ECF No. 28). The Court accepts all proposed redactions. The sealed and public versions of this Order differ only to the extent of those redactions, the publication date, and this footnote.

Compl., ECF No. 1; Def.'s Resp. at 7, ECF No. 14). The Army solicited this procurement as a firm fixed price construction contract, small business set-aside, and estimated its value to be between $5 to $10 million. (Compl. at 10). The procurement is part of a multi-stage project. (Def.'s Resp. at 7). Stage I involves "stone protection and a grade control structure"; it is scheduled to be completed on June 1, 2024. (*Id*.). The procurement in this case involves Stage II, which includes "surveying, clearing, excavating/mechanical dredging and placing, as well as transferring and shaping of placed material into topographic diversity site, seeding, and site restoration." (*Id*.). Stage III includes dredging backwater channels in the lower lake and restoration in other parts of the island; it will likely be awarded in 2026. (*Id*.). The project will conclude with Stage IV, commencing in 2029, and focusing on dredging and timber stand improvements and plantings. (*Id*.).

The Army expects Stage II to be "a single job completed within 569 days." (*Id*. at 8). Legacy was the lowest bidder, but the Army performed a responsibility review of Legacy. (*Id*.); *see also* FAR 9.104-1 (listing the standards for a prospective contractor to qualify as "responsible"); FAR 19.60201(a), (b) (upon determining and documenting that an apparent successful small business offeror lacks certain elements of responsibility, the contracting officer shall refer the matter to SBA). Before submitting a COC application to the SBA, the Contracting Officer ("CO") reviewed Legacy's Contractor Performance Assessment Report ("CPAR") on previous contracts. (Def.'s Resp. at 8). The CO drafted a Determination of Non-Responsibility Memo that highlighted Legacy's two ▮▮▮▮▮▮▮ past performance schedule ratings and three ▮▮▮▮▮ past performance schedule ratings; it also discussed Legacy's performance on an ongoing dredging contract. (*Id*.). The CO noted that the United States sought to ▮▮▮▮▮ Legacy ▮▮▮▮▮ on that contract after issuing ▮▮▮▮▮▮▮ and subsequently ▮▮▮▮▮▮▮▮▮ — both ▮▮▮▮▮ were issued because the United States believed Legacy had not adhered to the schedule of performance and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that delayed completion. (*Id*.). Although Legacy had the opportunity to respond to the SBA's COC review, Legacy did not participate in the CO's preparation of the Memo. (Compl. at 31; Def.'s Resp. at 9).

Legacy claims that the Army acted arbitrarily in "proposal evaluation, analysis, and referral of Legacy to the SBA," and that SBA's "lack of meaningful consideration and evaluation of the COC referral documents," were unreasonable. (Pl.'s Mot. at 5). Legacy also alleges that the CO's assessment and ultimate referral to the SBA violate FAR 9.104-3(b), Competition in Contracting Act ("CICA"), and 41 U.S.C. § 25. (*Id*. at 5).

## II.   Analysis

The Court may issue preliminary injunctions under RCFC 65 and the Tucker Act. 28 U.S.C. § 1491(b)(2). This injunctive remedy is "extraordinary and drastic," and to obtain it, the movant must show that (1) it is likely to succeed on the merits; (2) it will "suffer irreparable harm" in the absence of preliminary relief; (3) the "balance of the hardships tips in [its] favor;" and (4) injunctive relief "will not be contrary to the public interest." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). These factors must be established "by a clear showing." *GEO Grp., Inc. v. United States*, 100 Fed. Cl. 223, 226 (2011). While no single factor is dispositive, a protester must establish the first two factors before an injunction can be granted. *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009) (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)). Although a strong showing of

one factor may overcome weakness as to others, "the absence of an adequate showing," with regard to "any one factor may be sufficient" to demand denial of injunctive relief. *FMC Corp.*, 3 F.3d at 427.

    A. *Likelihood of Success on the Merits*

To succeed on the merits, Legacy must show that the Army's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also* 28 U.S.C. § 1491(b)(4). This standard is met by proof that the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure. *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1285–86 (Fed. Cir. 2010). Legacy has not established that it is "more likely than not" that it will succeed on the merits. *See Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012).

Legacy argues that the CO should have given more weight to the corrective actions Legacy took in response to its performance delays under the ongoing dredging contract and that failure to do so violated FAR 9.104-3(b). (Pl.'s Mot. at 9). FAR 9.104-3(b) states in relevant part: "A prospective contractor that is or recently has been seriously deficient in contract performance shall be presumed to be nonresponsible, unless the contracting officer determines that the circumstances were properly beyond the contractor's control, or that the contractor has taken appropriate corrective action." The Court is not persuaded that this provision requires the CO to affirmatively explain in depth in its memo why any corrective action taken is not appropriate, when the CO's failure to make such finding could as easily be gleaned from the ultimate recommendation to the SBA. Furthermore, as the United States notes, SBA is charged with evaluating "all elements of responsibility" using "its discretion," and "independently." *See* 13 CFR § 125.5; (Def.'s Resp. at 18). No evidence provided thus far indicates that the SBA failed to account for any alleged corrective action, and there is no dispute that Legacy had the chance to respond to the concerns at the SBA level before a final decision was made. (*See* Def.'s Resp. App. at 19, ECF 14-1 (SBA noting that Legacy "is taking remedial actions to shore up their management and quality issues and in fact have successfully completed similar actions for the federal government.")).

Legacy also argues that the CO's reliance on performance that has not yet been formalized in a CPAR constitutes a procedural violation. (Pl.'s Mot. at 8–9). Legacy's procedural violation claim relies on the fact that CPAR issuance triggers a contractor's right to appeal the CO's decision to one level above the CO at the agency level. (*Id.*). Yet, Legacy has not provided any legal authority to suggest—and in fact does not maintain—that the SBA is legally bound to limit its performance review to information that is captured in a CPAR. (May 15 Oral Argument Transcript ("OA Tr.") at 8:10–9:6, ECF No. 24). Nonetheless, Legacy still insists that the CO may have channeled incomplete information to the SBA. (Pl.'s Mot. at 5). Even if Legacy could prove that mere omissions in the CO's report constitute clear legal error, given that the SBA was the ultimate independent decisionmaker and itself provided Legacy with the opportunity to share its side, it is hard to imagine how Legacy could have been prejudiced by that error. *Caddell Constr. Co. v. United States*, 125 Fed. Cl. 30, 50 (2016) (". . . when a violation of statute or regulation has occurred, there must be a separate showing of prejudice.").

Other allegations in Legacy's motion for injunctive relief (for example, that the CO "acted in bad faith with intent to harm Legacy") are unsupported and rely solely on recitations of broad legal principles rather than evidence. (Pl.'s Mot. at 5); *see also Acad. Facilities Mgmt. v. United States*, 87 Fed. Cl. 441, 472 (2009) ("The standard of proof required for injunctive relief is a preponderance of the evidence."); *Textron, Inc. v. United States*, 74 Fed. Cl. 277, 287 (2006) ("When injunctive relief is warranted, it will only be issued upon a showing by a preponderance of the admissible evidence."); *Bear Mountainside Realty LLC v. United States*, 168 Fed. Cl. 179, 191 (2023) (noting that the "clear and convincing evidence of bad faith requires a party to show evidence of more than smoke; a party alleging bad faith must show the fire as well."). Legacy has not established likelihood of success on the merits.

### B.  Irreparable Harm

In identifying irreparable harm, the Court looks for an injury that, "by definition . . . cannot be remedied." *Oklahoma v. United States*, 144 Fed. Cl. 263, 276 (2019). The Court evaluates this factor by determining if the movant has "an adequate remedy in the absence of an injunction." *GEO Grp. Inc. v. United States*, 100 Fed. Cl. 223, 228 (2019) (quoting *Magellan Corp. v. United States*, 27 Fed. Cl. 446, 447 (1993)).

Here again, Legacy's motion is unsupported by evidence establishing actual irreparable harm beyond reliance on general principles. Legacy argues that "a lost opportunity . . . to compete on a level playing field," by itself "is sufficient to prove irreparable harm" (Pl.'s Mot. at 10). But disappointed bidders cannot reduce the irreparable harm factor to rehashing the merits of their claim. Instead, the movant must demonstrate financial injury that is "both certain and great" and will have "an immediate and substantial impact." *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 39, 48 (2022) (citing *Wis. Gas Co. v. Fed. Energy Reg. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) and *Sys. Appl'n & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012)). Here, Legacy did not provide evidence establishing the financial harm caused by absence of an injunction in the context of Legacy's business (e.g., the size of the procurement in comparison to Legacy's other active procurements; an estimate of the forgone cost of participation in the procurement; or even, quantifying the size of the economic loss that cannot be recovered even if there is an eventual permanent injunction). (OA Tr. at 19:21–25 (plaintiff noting that the only evidence of irreparable harm is the general allegation of "losing the profits and the ability to earn income," and no quantified assessment)); *see Sierra Mil. Health Servs., Inc. v. United States*, 58 Fed. Cl. 573, 582 (2003) (finding that "economic loss does not, in and of itself, constitute irreparable harm. Only economic loss that threatens the survival of a movant's business constitutes irreparable harm") (quoting *Found. Health Fed. Servs. v. United States*, No. 93-1717, 1993 WL 738426, at *3 (D.D.C. Sept. 23, 1993)). In the absence of evidence of irreparable harm, Legacy has not met its burden. *See Point Blank Enters., Inc. v. United States*, 2023 U.S. Claims LEXIS 3241, at *34 (Fed. Cl. Aug. 29, 203) (". . . the Court has previously emphasized that to establish irreparable harm, movants must do more than just 'invoke[] the generic, standard legal principles,' without any 'evidentiary support.'") (citing *IAP Worldwide Servs. v. United States*, 159 Fed. Cl. 265, 324 (2022)).

The United States' response to the motion for injunctive relief includes a declaration from the CO. (Def.'s Resp. App. at 3). The declaration identifies potential risks associated with pausing performance, which has been underway since March 11, 2024. (*Id*.). The United States

4

maintains that pausing performance will interfere with clearing fallen trees and that can pose a risk in the navigable waters during a high-water event. (*Id*. at 6–7). The United States also identifies impact costs of at least $ resulting from additional mobilization and demobilization costs if Stage II is delayed (some of which at least could have been avoided had Legacy not filed this protest "nearly two months," after performance began and "an entire month after its Pre-filing Notice of Intent to File on April 4, 2024."). (*Id*.; *see also* Def.'s Resp. at 20).

Against this background, the Court finds that Legacy has not met its burden of showing irreparable harm in the absence of injunctive relief. *Amazon.com, Inc.*, 239 F.3d at 1350 (finding that a plaintiff may not be granted preliminary relief "unless it establishes both of the first two factors . . . likelihood of success on the merits and irreparable harm."); *Altana Pharma AG*, 566 F.3d at 1005 ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction.").

### III.   Conclusion

For the stated reason, the Court **DENIES** Plaintiff's Motion for an Injunction, (ECF No. 4). The Court **ORDERS** the parties to meet and confer and file a Joint Status Report proposing redactions to this Order by **June 7, 2024**.

**IT IS SO ORDERED.**

s/     David A. Tapp
DAVID A. TAPP, Judge